Raed Gonzalez, Esq.
GONZALEZ OLIVIERI, LLC
2200 Southwest Freeway, Suite 550
Houston, Texas 77098
Tel: 713-481-3040
Fax: 713-588-8683
*Counsel of Record for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| FIEL Houston Inc., et al.,<br><br>    *Plaintiffs*,<br><br>           v.<br><br>Chad F. Wolf, Acting Secretary of the U.S. Department of Homeland Security; and Kenneth T. Cuccinelli, Acting Director of the U.S. Citizenship and Immigration Services,<br><br>    *Defendants*. | Case No. 4:20-cv-2515<br><br><br><br>Date: July 17, 2020 |

## AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND WRIT OF MANDAMUS

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

This is a Amended Complaint, pursuant to Federal Rule of Civil Procedure 15(a), for relief under the Administrative Procedure Act ("APA") and for Writ of Mandamus.[1] The Plaintiffs file the instant Complaint and Writ of Mandamus against Defendants because the U.S. Citizenship and Immigration Services ("USCIS"), a federal agency within the Department of Homeland Security ("DHS"), violated the APA by willfully defying the U.S. Supreme Court's decision in *Department of Homeland Security v. Regents of the University of California*, 2020 WL 3271746 * (Jun. 18, 2020), which held that the rescission of the Deferred Action for Childhood Arrivals ("DACA") program was unlawful, because it continues to refuse to accept new DACA Applications. *See* Exhibit 1—USCIS Website Printout. Through this Complaint and Writ, Plaintiffs request that this Court compel the USCIS to accept and adjudicate their DACA Applications pursuant to the APA, 5 U.S.C. § 706, and the All Writs Act, 28 U.S.C. § 1651.

Plaintiffs seek a declaratory judgement stating that the USCIS must accept and adjudicate their DACA Applications and that it is abusing its discretion, acting arbitrarily, capriciously, and not in accordance with the law by not following the U.S. Supreme Court's decision in *Regents*; and seek relief under the APA and All

---

[1] The reason for this Amended Complaint is that more Plaintiffs wishing to be added to the Complaint were identified and this triggered the need to put forth Class allegations.

Writs Act, to compel the USCIS to accept and adjudicate their DACA Applications.

The instant action is being filed against the following Defendants: Chad F. Wolf, in his purported official capacity as the Acting Secretary of the DHS; and Kenneth T. Cuccinelli, in his purported official capacity as the Acting Director of the USCIS.

## I.  INTRODUCTION

1.  On June 15, 2012, the DHS issued a policy memorandum implementing a new program known as DACA. *See* Exhibit 2—Policy Memorandum (Jun. 15, 2012). The goal of the program was to protect migrants who had been brought to the United States illegally as children. *Id.*

2.  On September 5, 2017, after a change in administrations, the DHS issued a second policy memorandum on DACA, which rescinded the program. *See* Exhibit 3—Policy Memorandum (Sep. 5, 2017). The basis for the rescission was that the DACA program was illegal. *Id.*

3.  After lengthy litigation on the issue of whether the DHS properly terminated the DACA program, the case finally reached the U.S. Supreme Court.

4.  On June 18, 2020, the Supreme Court held that the DHS' rescission of the DACA program was unlawful because it violated the APA. *Regents*, 2020 WL 3271746 at *14-15. Specifically, the Supreme Court held that the DHS' failure to address "options of retaining forebearance or accommodating particular reliance

interests," was arbitrary and capricious. *Id*. at 15.

5.   The day of the Supreme Court's decision, the USCIS released a statement on its website stating: "Today's court opinion has no basis in law and merely delays the President's lawful ability to end the illegal [DACA] amnesty program."[2]

6.   In turn, Acting Secretary Chad Wolf stated: "The DACA program was created out of thin air and implemented illegally. The American people deserve to have the Nation's laws faithfully executed as written by their representatives in Congress—not based on the arbitrary decisions of a past Administration. This ruling usurps the clear authority of the Executive Branch to end unlawful programs."[3]

7.   Finally, Acting Secretary Kenneth Cuccinelli stated: "The Supreme Court's decision is an affront to the rule of law and gives Presidents power to extend discretionary policies into future Administrations. No Justice will say that the DACA program is lawful, and that should be enough reason to end it."[4]

8.   It is clear from the aforementioned statements that the Government and its officials believe that the Supreme Court's decision in *Regents* is erroneous and that they are refusing to follow the Court's decision. This conclusion is not speculative on the part of Plaintiffs herein because following the ruling in

---

[2] https://www.uscis.gov/news/news-releases/uscis-statement-supreme-courts-daca-decision
[3] https://www.dhs.gov/news/2020/06/18/dhs-statement-supreme-court-decision-daca
[4] *Id.*

*Regents*, that upheld continuing validity of the DACA program, a DACA Application was filed by an individual only to be rejected by the USCIS in a clear violation of the Supreme Court's decision. *See* Exhibit 4—USCIS Rejection Notice.

9. Furthermore, the USCIS's own website still states as of today's date that "USCIS is not accepting requests from individuals who have never before been granted deferred action under DACA." *See* Exhibit 1, *supra.* Once again, this is in clear violation of the ruling in *Regents*.

10. In light of the above, Plaintiffs maintain that the USCIS's continued refusal to accept new Forms I-821D violates the APA. Accordingly, Plaintiffs brought this action to compel the USCIS to fulfill its nondiscretionary duty to accept their DACA Applications and adjudicate them on the merits, in full compliance with the Supreme Court's holding in *Regents*.

11. Subsequent to the filing of the original Complaint (ECF No. 1), Plaintiffs identified new individuals who are also not able to file new DACA Applications because the USCIS refuses to allow them to do so. Therefore, Plaintiffs now file this Amended Complaint to add these individuals to this suit and to put forth Class allegations.

## II.  JURISDICTION AND VENUE

12. This action arises under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq.*, and the APA, 5 U.S.C. §§ 701 *et seq*. Because this matter involves the federal laws of the United States, subject-matter jurisdiction is proper under 8 U.S.C. § 1331.

13. This Court also has jurisdiction under 28 U.S.C. § 1361, which gives federal courts "original jurisidiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because Plaintiffs reside in Houston, Texas, or the surrounding metropolitan area.

## III.  PARTIES

15. FIEL Houston is an immigrant civil rights organization located in Houston, Texas.

16. Plaintiffs Maria Gutierrez, Enrique Contreras, Fernando Miranda Marin, Orlando Saenz, Shayli Rodriguez, Anahi Lagunas, Elizabeth Rebolloso, and Cesar Espinosa are all residents of Houston, Texas or its metropolitan area.

17. Class members Lesly Saenz, Alberto Saenz, Carlos Campos, Aura Barrera, Maximilliano Segura, Maria Ramirez Dominguez, and Joel Aguirre are all

residents of Houston, Texas or its metropolitan area.

18. Defendant, Chad F. Wolf, is the purported Acting Secretary of the DHS. He is sued in his official capacity. He may be served at 2707 Martin Luther King Jr. Ave. SE, Washington, D.C. 20528-0485.

19. Defendant, Kenneth T. Cuccinelli, is the purported Acting Director of the USCIS. He is sued in his official capacity. He may be served at 20 Massachussetts Ave., Room 4210, Washington D.C. 20529.

## IV.   STATUTORY AND REGULATORY BACKGROUND

20. Because the DACA program was not implemented via statute or regulation, but through executive action of the Executive Branch, there are no relevant statutes or regulations to mention with respect to the program. The implementing memorandum is thus the only framework applicable to DACA eligibility and the parameters of the program. *See* Exhibit 2—Policy Memorandum (Jun. 15, 2012).

21. District Courts have the authority to "compel agency action unlawfully withheld," and "hold unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 8 U.S.C. § 706(1)-(2)(A).

22. "Agency action" is defined to include the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act. 5 U.S.C. § 551(13).

23. District Courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651.

24. District Courts have original jurisdiction in any mandamus action that seeks to compel an officer or employee of the United States to perform a duty that is owed to the Plaintiff. 28 U.S.C. § 1361.

## V.    FACTUAL BACKGROUND

25. Effective March 1, 2003, the DHS assumed responsibility for the functions of the agency formerly known as the "Immigration and Naturalization Service." The Secretary of DHS is now vested with "[a]ll authorities and functions of the Department of Homeland Security to administer and enforce the immigration laws." 8 C.F.R. § 2.1.

26. The USCIS is a bureau within the DHS and delegated supervisory authority over all operations by the Secretary of DHS. *Id.* The USCIS is responsible for accepting and adjudicating all DACA Applications. *See* Exhibit 2, *supra*.

27. Plaintiff FIEL Houston is an immigration organization located in Houston, Texas. FIEL seeks to advance the legal rights of immigrants by advocating for just laws for young immigrants and their families.

28. Plaintiff Maria Gutierrez is eligible for DACA in accordance with the USCIS's 2012 policy memorandum. She entered the United States before the age of

8

sixteen, has continuously resided in the United States for five years prior to June 15, 2012, was present in the United States on or before June 15, 2012, is currently in school or has graduated from high school or obtained a general education certificate, has not been convicted of a disqualifying criminal offense, and is not above the age of thirty. At present, however, she is not able to file her initial DACA Application.

29. Plaintiff Enrique Contreras is eligible for DACA in accordance with the USCIS's 2012 policy memorandum. He entered the United States before the age of sixteen, has continuously resided in the United States for five years prior to June 15, 2012, was present in the United States on or before June 15, 2012, is currently in school or has graduated from high school or obtained a general education certificate, has not been convicted of a disqualifying criminal offense, and is not above the age of thirty. At present, however, he is not able to file his initial DACA Application.

30. Plaintiff Fernando Miranda Marin is eligible for DACA in accordance with the USCIS's 2012 policy memorandum. He entered the United States before the age of sixteen, has continuously resided in the United States for five years prior to June 15, 2012, was present in the United States on or before June 15, 2012, is currently in school or has graduated from high school or obtained a general education certificate, has not been convicted of a disqualifying criminal offense,

and is not above the age of thirty. At present, however, he is not able to file his initial DACA Application.

31. Plaintiff Orlando Saenz is eligible for DACA in accordance with the USCIS's 2012 policy memorandum. He entered the United States before the age of sixteen, has continuously resided in the United States for five years prior to June 15, 2012, was present in the United States on or before June 15, 2012, is currently in school or has graduated from high school or obtained a general education certificate, has not been convicted of a disqualifying criminal offense, and is not above the age of thirty. At present, however, he is not able to file his initial DACA Application.

32. Plaintiff Shayli Rodriguez is eligible for DACA in accordance with the USCIS's 2012 policy memorandum. She entered the United States before the age of sixteen, has continuously resided in the United States for five years prior to June 15, 2012, was present in the United States on or before June 15, 2012, is currently in school or has graduated from high school or obtained a general education certificate, has not been convicted of a disqualifying criminal offense, and is not above the age of thirty. At present, however, she is not able to file her initial DACA Application.

33. Plaintiff Anahi Lagunas is eligible for DACA in accordance with the USCIS's 2012 policy memorandum. She entered the United States before the age of

sixteen, has continuously resided in the United States for five years prior to June 15, 2012, was present in the United States on or before June 15, 2012, is currently in school or has graduated from high school or obtained a general education certificate, has not been convicted of a disqualifying criminal offense, and is not above the age of thirty. At present, however, she is not able to file her initial DACA Application.

34. Plaintiff Elizabeth Rebolloso is eligible for DACA in accordance with the USCIS's 2012 policy memorandum. She entered the United States before the age of sixteen, has continuously resided in the United States for five years prior to June 15, 2012, was present in the United States on or before June 15, 2012, is currently in school or has graduated from high school or obtained a general education certificate, has not been convicted of a disqualifying criminal offense, and is not above the age of thirty. At present, however, she is not able to file her initial DACA Application.

35. Plaintiff Cesar Espinosa is eligible for DACA in accordance with the USCIS's 2012 policy memorandum. He entered the United States before the age of sixteen, has continuously resided in the United States for five years prior to June 15, 2012, was present in the United States on or before June 15, 2012, is currently in school or has graduated from high school or obtained a general education certificate, has not been convicted of a disqualifying criminal offense, and is not

above the age of thirty. At present, however, he is not able to file his initial DACA Application.

36. Class member Lesly Saenz, is eligible for DACA in accordance with the USCIS's 2012 policy memorandum. She entered the United States before the age of sixteen, has continuously resided in the United States for five years prior to June 15, 2012, was present in the United States on or before June 15, 2012, is currently in school or has graduated from high school or obtained a general education certificate, has not been convicted of a disqualifying criminal offense, and is not above the age of thirty. At present, however, she is not able to file her initial DACA Application.

37. Class member Alberto Saenz is eligible for DACA in accordance with the USCIS's 2012 policy memorandum. He entered the United States before the age of sixteen, has continuously resided in the United States for five years prior to June 15, 2012, was present in the United States on or before June 15, 2012, is currently in school or has graduated from high school or obtained a general education certificate, has not been convicted of a disqualifying criminal offense, and is not above the age of thirty. At present, however, he is not able to file his initial DACA Application.

38. Class member Carlos Campos is eligible for DACA in accordance with the USCIS's 2012 policy memorandum. He entered the United States before the age

of sixteen, has continuously resided in the United States for five years prior to June 15, 2012, was present in the United States on or before June 15, 2012, is currently in school or has graduated from high school or obtained a general education certificate, has not been convicted of a disqualifying criminal offense, and is not above the age of thirty. At present, however, he is not able to file his initial DACA Application.

39. Class member Aura Barrera is eligible for DACA in accordance with the USCIS's 2012 policy memorandum. She entered the United States before the age of sixteen, has continuously resided in the United States for five years prior to June 15, 2012, was present in the United States on or before June 15, 2012, is currently in school or has graduated from high school or obtained a general education certificate, has not been convicted of a disqualifying criminal offense, and is not above the age of thirty. At present, however, she is not able to file her initial DACA Application.

40. Class member Maximilliano Segura is eligible for DACA in accordance with the USCIS's 2012 policy memorandum. He entered the United States before the age of sixteen, has continuously resided in the United States for five years prior to June 15, 2012, was present in the United States on or before June 15, 2012, is currently in school or has graduated from high school or obtained a general education certificate, has not been convicted of a disqualifying criminal offense,

and is not above the age of thirty. At present, however, he is not able to file his initial DACA Application.

41. Class member Maria Ramirez Dominguez is eligible for DACA in accordance with the USCIS's 2012 policy memorandum. She entered the United States before the age of sixteen, has continuously resided in the United States for five years prior to June 15, 2012, was present in the United States on or before June 15, 2012, is currently in school or has graduated from high school or obtained a general education certificate, has not been convicted of a disqualifying criminal offense, and is not above the age of thirty. At present, however, she is not able to file her initial DACA Application.

42. Class member Joel Aguirre is eligible for DACA in accordance with the USCIS's 2012 policy memorandum. He entered the United States before the age of sixteen, has continuously resided in the United States for five years prior to June 15, 2012, was present in the United States on or before June 15, 2012, is currently in school or has graduated from high school or obtained a general education certificate, has not been convicted of a disqualifying criminal offense, and is not above the age of thirty. At present, however, he is not able to file his initial DACA Application.

43. At this time, there is no way for Plaintiffs and Class members to file their DACA Applications because the USCIS is not accepting them and, as is evident from

the example being provided to this Court, the USCIS continues to reject such filings. *See* Exhibit 4, *supra*. Because there are no other forums or means available to Plaintiffs, they are filing the present action seeking relief under the APA.

## VI.   CLASS ACTION ALLEGATIONS

44. Plaintiffs incorporate by reference the allegations in paragraphs 1-43.

45. Plaintiffs herein, along with the other idenitified Class members, bring this action on behalf of themselves and all others who are similarly situated pursuant to Federal Rules of Civil Procedure ("FRCP") 23(a) and 23(b)(2).

46. The Class consists of individuals who have been denied the ability to file their DACA Applications by the USCIS. Excluded from the Class are Defendants named herein and the Agencies for which they work. Likewise excluded from the class is any judge or judicial officer presiding over this matter and any members of their family and judicial staff.

47. Class certification is appropriate because this action involves questions of law and fact common to the class, the class is so numerous that joinder of all members is impractical, the claims of the Plaintiffs are typical of the claims of the class, the Plaintiffs will fairly and adequately protect the interests of the class, and Defendants have acted on grounds that apply generally to the class, so that final declaratory relief is appropriate with respect to the class as a whole. *See*

FRCP 23(a).

48. With respect to numerosity, a "plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members. *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981).

49. The number of actual class members is not the determinative question, as "[t]he proper focus (under Rule 23(a)(1)) is not on the numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Phillips v. Joint Legislative Committee*, 637 F.2d 1014, 1022 (5th Cir. 1981).

50. In determining whether joinder of members is impracticable, a court may consider "geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Zeidman*, 651 F.2d at 1038.

51. A class consisting of more than forty members "should raise a presumption that joinder is impracticable." *Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 624 (5th Cir. 1999) (quoting 1 Newberg on Class Actions § 3.05, at 3-25 (3d ed. 1992)).

52. At present, as noted above, Plaintiffs have identified 8 other Class members. However, the precise number of potential Class members is still not known by Plaintiffs at this time, and they have no way of communicating with those

members. Although it is not possible to accurately state the total number of DACA-eligible individuals who may potentially be class members, estimates indicate that there are as many as 300,000 potential DACA applicants who have not previously received DACA benefits.[5] Plaintiffs also wish to point out that there are an estimated 85,000 individuals in the state of Texas alone that are eligible for DACA and are not able to file their applications.[6] Those individuals are all potential Class members and can be identified as this case progresses. Therefore, Plaintiffs maintain that numerosity is easily met in this case.

53. Furthermore, Plaintiffs believe that as this case progresses, the Class will reach a number that would raise the presumption that joinder is impracticable, especially considering the thousands and thousands of potential DACA eligible individuals that reside in Texas. As a result, a class action is superior to all other available methods for the fair and efficient adjudication of this matter.

54. With respect to commonality, the test is not demanding and is met "where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Lightbourn v. County of El Paso*, 118 F.3d 421,

---

[5] Svajlenka, Nicole Prchal, Jawetz, Tom, and Wolgin, Phillip E. "The Trump Administration Must Immediately Resume Processing New DACA Applications" (Jul. 13, 2020) https://www.americanprogress.org/issues/immigration/news/2020/07/13/487514/trump-administration-must-immediately-resume-processing-new-daca-applications/
[6] https://www.migrationpolicy.org/programs/data-hub/deferred-action-childhood-arrivals-daca-profiles

426 (5th Cir. 1997).

55. In this case, Plaintiffs, and already identified Class members, seek to represent the following nationwide class that, as demonstrated by the factual pattern of all Class members, have the following questions of law and fact in common:

    a.  Whether the Class members are are eligible for DACA relief;

    b.  Whether the Class members are able to file initial DACA Applications with the USCIS after the U.S. Supreme Court's decision in *Regents*;

    c.  Whether the USCIS's refusal to allow Class members to file their initial DACA Applications is an agency action that is being unlawfully withheld;

    d.  Whether the USCIS has acted arbitrarily, capriciously, abused its discretion, and not in accordance with the law by not allowing Class members to file their initial DACA Applications;

    e.  Whether the members of the Class have been aggrieved or otherwise been legally wronged by the USCIS's refusal to allow them to file their DACA Applications;

    f.  Whether, in light of the Supreme Court's decision in *Regents*, the USCIS is compelled to accept and adjudicate the Class members' DACA Applications.

56. Given the aforementioned common issues of law and fact, Plaintiffs maintain

that commonality has been met in this case.

57. Similar to commonality, the test for typicality is not demanding and "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom  they purport to represent." *Lightborn*, 118 F.3d at 426.

58. Here, Plaintiffs' claim is typical for the claims of all Class members because, as noted above, each member has been similarly affected by the USCIS's refusal to allow them to file their initial DACA Applications, contrary to the U.S. Supreme Court's decision in *Regents*.

59. Lastly, with respect to adequate and fair representation of the class, a named plaintiff is only rendered an inadequate representative if the differences between the named plaintiff and class members creates a conflict between the named plaintiff's and class members' interests. *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).

60. In this case, Plaintiffs affirm that they will adequately and fairly protect the interests of the members of the Class, as they has been legally wronged by the USCIS, just like all other Class members have been, and they have retained competent counsel to remedy that wrong.

61. Furthermore, Plaintiffs have no interests that are unethical or in conflict with other members of the Class. Accordingly, they maintain that they will be a fair and adequate representatives of the Class.

62. Finally, Defendants have acted on grounds generally applicable to the proposed Class, thereby making appropriate final declaratory relief proper with respect to the entire Class.

63. Having satisfied the requirements under Rule 23(a), Plaintiffs will now address how the proposed Class also satisfies the requirements of Rule 23(b)(3).

64. Under Rule 23(b)(3), a class action can be maintained if: "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members (predominance), and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy (superiority)."

65. Relevant to the Rule 23(b) requirements are: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

66. The members of the Class, because they share the same legal wrong committed against them by the USCIS, will have no interest in individually controlling the prosecution or defense of separate actions.

67. Because the Class members' cases are identical to each other, in that they share

the exact same questions of law and fact, they have a strong desire and interest that litigation be concentrated in one forum.

68. Further, there will be no difficulty, on the part of Plaintiffs and her counsel, in managing a class action complaint, as said counsel has extensive experience involving complex immigration law issues.

69. In sum, Plaintiffs move that the proposed Class, having met all the requirements under Rule 23(a) and (b)(3), be certified by this Court.

## VII.   CLAIMS FOR RELIEF

### 1.   Count 1—Violation of the APA

70. Plaintiffs incorporate by reference the allegations in paragraphs 1-69.

71. Plaintiffs contend that under the APA, the USCIS's refusal to allow for the filing of initial DACA applications—as evidenced by both their website and their rejection of attempted filings—is an agency action that is "unlawfully withheld." 5 U.S.C. § 706(1). Plaintiffs thus request the Court to compel the USCIS to accept and adjudicate their DACA Applications.

72. As noted above, after the Supreme Court's decision in *Regents* declared the rescission of DACA to be arbitrary and capricious, DACA returned to its pre-2017 status. *See Casa De Maryland, et al., v. U.S. Dep't of Homeland Sec.*, 8:17-cv-02942-PWG (Dist. MD, Jul. 17, 2020) (finding that DACA is now restored to its pre-September 5, 2017 status). Therefore, the USCIS is now mandated to

21

accept and adjudicate all new DACA Applications in accordance with its 2012 policy memorandum. *See* Exhibit 2, *supra*.

73. However, to date, the USCIS has failed to adhere to the Supreme Court's mandate that new DACA Applications must be accepted by continuing to refuse to accept and to adjudicate such DACA Applications. *See* Exhibits 1 and 4, *supra*. Therefore, the USCIS is unlawfully withholding agency action and Plaintiffs move this Court to compel the USCIS to act in accordance with the Supreme Court's decision in *Regents* and its own 2012 policy memorandum on DACA.

74. Plaintiffs next contend that under the APA, the USCIS's refusal to accept initial DACA Applications is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Plaintiffs thus request this Court to compel the USCIS to accept and adjudicate their DACA Applications on the merits.

75. The U.S. Supreme Court has held that an agency's actions may be considered arbitrary, capricious, or an abuse of discretion if said actions inexplicably depart from the agency's own course of adjudication, regulations, or policies. *See INS v. Yang*, 519 U.S. 26, 32 (1996) ("Though an agency's discretion is unfettered at the outset, if it announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be

22

governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as 'arbitrary, capricious, [or] an abuse of discretion'"); *see also Lugo-Resendez v. Lynch*, 831 F.3d 337, 338 (5th Cir. 2016) (finding the BIA abuses its discretion when it issues a decision that is based on unexplained departures from regulations or established policies); *Wong Wing Hang v. INS*, 360 F.2d 715, 718-19 (2d Cir. 1996) (finding that an agency abuses its discretion when it inexplicably departs from prior procedures).

76. Prior to the 2017 rescission of the DACA program, the USCIS adjudicated new DACA Applications in accordance with the 2012 policy memorandum. *See* Exhibit 2, *supra*. After the rescission memorandum came out in 2017, new DACA applications were no longer accepted. *See* Exhibit 3, *supra*. Now, however, the Supreme Court has invalidated the DACA rescission memorandum, and so, the USCIS must accept and adjudicate new DACA Applications in accordance with the 2012 memorandum.

77. In this case, the USCIS is not allowing Plaintiffs to file their DACA Applications, even though it is mandated to accept and adjudicate those applications in accordance with the 2012 memorandum. *See* Exhibit 2, *supra*. As further evidence that the USCIS will not adjudicate Plaintiffs' DACA Applications, Plaintiffs point the Court to Exhibit 4, which clearly shows that

the USCIS is indeed rejecting new DACA Applications even though the Supreme Court has mandated otherwise. Therefore, the USCIS has departed from its prior, settled course of adjudication and policies regarding the DACA program, and as such, has acted arbitrarily, capriciously, and has abused its discretion.

78. In addition, the USCIS can abuse its discretion in departing from prior binding precedent. *See*, *e.g.*, *INS v. Yang*, 519 U.S. 26, 32 (1996) (finding that the government abuses discretion by departing from prior precedent).

79. The Supreme Court's decision in *Regents* was clear: the 2017 termination of the DACA program was unlawful, as it violated the APA. Therefore, after the Court's decision, the DACA program reverted back to its pre-2017 status. That means that the USCIS must, pursuant the Supreme Court's decision, accept new DACA Applications.

80. By refusing to allow Plaintiffs to file new DACA Applications, the USCIS failed to follow the binding precendential decision of the Supreme Court in *Regents*. As a result, the USCIS's refusal to accept new filings is an ultra vires action as well as an  abuse of  its discretion.

81. Finally, the USCIS's refusal to allow the filing of new DACA Applications is legally erroneous. As noted in the 2012 policy memorandum, which is now once again the law, the USCIS is mandated to accepted and adjudicate new DACA

Applications. By refusing to allow filing said Applications, the USCIS violates the law.

82. In sum, given the law and evidence presented, Plaintiffs maintain that judicial review under the APA is proper because USCIS has acted arbitrarily, capriciously, has abused its discretion, and has not acted in accordance with the law.

### 2. Count 2—Mandamus Relief

83. Plaintiffs incorporate by reference the allegations in paragraphs 1-82.

84. Plaintiffs maintain that mandamus relief is appropriate in this case because the USCIS has a nondiscretionary duty to accept and adjudicate their DACA Applications. Plaintiffs thus request that this Court to grant mandamus relief and compel the USCIS to accept and adjudicate their DACA Applications on the merits.

85. As noted above, the All Writs Act, 28 U.S.C. § 1651(a), confers the power of mandamus on the District Courts.

86. District Courts have original jurisdiction in a mandamus action to compel an officer or employee of the United States to perform a duty owed to the plaintiff. 28 U.S.C. § 1361.

87. The power of a district court to compel official action by mandatory order is limited to the enforcement of nondiscretionary, plainly defined, and purely

ministerial duties. *Decatur v. Paulding*, 39 U.S. (1 Pet.) 496, 514-17 (1840); *Work v. Rives*, 267 U.S. 175, 177 (1925); *Wilbur v. United States*, 281 U.S. 206, 218 (1930).

88. An official action is not ministerial unless "the duty in a particular situation is so plainly prescribed as to be free from doubt and equivalent to a positive command." *Wilbur*, 267 U.S. at 177.

89. In this case, the USCIS, pursuant to its 2012 policy memorandum, has a nondiscretionary, plainly defined duty to accept and adjudicate new DACA Applications for those who meet the required criteria. *See* Exhibit 2, *supra*.

90. The duty to accept and adjudicate new DACA Applications is a ministerial one because the 2012 policy memorandum leaves no doubt whatsoever that the USCIS is required to accept and adjudicate DACA Applications on a case-by-case basis, and the policy memorandum equates to a "positive command" to accept and adjudicate new DACA Applications. *Id*.

91. In sum, the 2012 policy memorandum, which is now once again in affect after the Supreme Court's ruling in *Regents*, mandates that USCIS accept and adjudicate new DACA Applications on the merits. By not allowing Plaintiffs to file their initial DACA Applications, the USCIS has failed to carry out its nondiscretionary duty that the memorandum plainly spells out. Plaintiffs thus request for this Court to grant mandamus relief, in order to compel the USCIS to

accept and adjudicate their DACA Applications.

### 3.  Count 3—Equal Access to Justice Act

92. Plaintiffs incorporate by reference the allegations in paragraphs 1-91.

93. "Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

94. Furthermore, "[a]n agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding." 5 U.S.C. § 504(a)(1).

95. It is clear that Defendants have failed—without any legal or factual basis—to begin accepting new DACA Applications. Such a failure has resulted in Plaintiffs' having been forced to retain the services of an attorney to pursue the instant action, in addition to other costs and expenses incurred, in order to insure that their DACA Applications are accepted and adjudicated by the USCIS.

96. Plaintiffs, as the prevailing party in the instant action are clearly entitled to post-

judgment attorney's fees and associated costs given Defendants' open and public defiance of a Supreme Court decision

97. Wherefore, Plaintiffs respectfully request that the Court award reasonable attorneys' fees and costs to Plaintiffs, pursuant to the Equal Access to Justice Act. *See* 5 U.S.C. § 504(a) and 28 U.S.C. § 2412(d).

## VIII.  CONCLUSION

98. The continued refusal of the USCIS to accept new DACA Applications is an agency action that was unlawfully withheld and arbitrary, capricious, an abuse of discretion and not in accordance with the law. Judicial review by this Court is therefore warranted under the APA.

99. Moreover, the decision to reject or not accept newly filed DACA Applications amounts to a failure to fulfull the USCIS's nondiscretionary duty to accept and adjudicate said applications, as required by the 2012 policy memorandum. Therefore mandamus relief is appropriate.

## IX.    PRAYER FOR RELIEF

100. Wherefore, Plaintiffs respectfully request that this Court:

   a.  accept jurisdiction and venue as proper;

   b.  issue an order certifying Plaintiffs' Class, appointing Plaintiffs as the representatives of that Class, and designating Plaintiffs' counsel as counsel for the Class;

   c.  issue a declaratory judgment that the the USCIS is mandated to accept and

adjudicate all new DACA Applications under the APA and the All Writs Act.

d.  issue a writ of mandamus that the USCIS has a nondiscretionary duty to allow Plaintiffs to file their DACA Applications, and it is failing to carry out that duty;

e.  grant reasonable attorney's fees, expenses, and costs of court pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504; 28 U.S.C. § 2412; and

f.  grant Plaintiffs any and all other relief as the Court may deem just and proper.

Respectfully submitted,

GONZALEZ OLIVIERI, LLC

*/s/ Raed Gonzalez*

_____
Raed Gonzalez, Esq.
Attorney for Plaintiff
Texas Bar No. 24010063
2200 Southwest Freeway, Suite 550
Houston, Texas 77098
Phone: 713-481-3040
Fax: 713-588-8683
rgonzalez@gonzalezolivierillc.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| FIEL Houston Inc., et al., | |
|     *Plaintiffs*, | |
|       v. | Case No. 4:20-cv-2515 |
| Chad F. Wolf, Acting Secretary of the U.S. Department of Homeland Security; and Kenneth T. Cuccinelli, Acting Director of the U.S. Citizenship and Immigration Services; | |
|     *Defendants*. | Date: July 17, 2020 |

---

## INDEX OF EXHIBITS

---

- Exhibit 1—USCIS Website Printout

- Exhibit 2—Policy Memorandum (Jun. 15, 2012)

- Exhibit 3—Policy Memorandum (Sep. 5, 2017)

- Exhibit 4—USCIS Rejection Notice