**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| FIEL Houston, Inc., *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No. 4:20-cv-2515 |
| Chad F. Wolf, Acting Secretary of the U.S. Department of Homeland Security, *et al*., | Date: September 21, 2020 |
| *Defendants*. | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Defendants, in lieu of an answer, filed an opposition to Plaintiff's motion for preliminary injunction and a memorandum in support of their motion to dismiss. In

1

that opposition and memorandum, Defendants argue that Plaintiff's amended complaint should be dismissed for lack of jurisdiction, under Federal Rule of Civil Procedure ("FRCP") 12(b)(1), and failure to state a claim, under FRCP 12(b)(6). *See* ECF No. 23. They further argue that Plaintiffs have not demonstrated that they meet the requirements for a grant of a preliminary injunction. Accordingly, Defendants maintain that Plaintiffs' motion for preliminary injunction should be denied.

Plaintiffs respectfully maintain that Defendants' arguments are legally erroneous and without merit because this court does not lack jurisdiction over their claims, Plaintiffs have indeed stated a valid claim upon which relief can be granted, and they have demonstrated they meet each requirement for granting a preliminary injunction. Accordingly, Plaintiffs move this Court to dismiss Defendants' request to deny a preliminary injunction and to dismiss Plaintiffs' complaint.

## I. ARGUMENT

### A. Plaintiffs have not challenged a final agency action

Defendants first argue that this Court lacks jurisdiction because there has been no final agency action in this case. *See* ECF No. 23 at 10-11. Specifically, Defendants assert that the steps that the Department of Homeland Security ("DHS") took after the Supreme Court's decision in *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891 (2020) were merely steps towards a final agency action, which Defendants contend is the memorandum by Chad F. Wolf issued on July 28,

2020. *Id*. at 11-12. There are two problems with Defendants' arguments.

First, Plaintiffs are not challenging the Wolf memorandum. Rather, Plaintiffs are challenging the failure of the U.S. Citizenship and Immigration Services ("USCIS") to accept and adjudicate initial Deferred Action for Childhood Arrivals ("DACA") after the Supreme Court's decision in *Regents*. Plaintiffs maintain that after *Regents*, the USCIS is required to accept and adjudicate all initial DACA requests. Because the USCIS has refused to do so, it has unlawfully withheld agency action and violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1).

Second, Plaintiffs maintain that in this case, agency inaction is final such that judicial review is warranted. *See Sierra Club v. Peterson*, 228 F.3d 559, 568 (5th Cir. 2000) ("In certain circumstances, agency inaction may be sufficiently final to make judicial review appropriate."). The USCIS has refused to act and accept initial DACA applications, even though the Supreme Court and the District Court in *Casa De Maryland*, *et al., v. U.S. Dep't of Homeland Sec.*, 8:17-cv-02942-PWG (Dist. MD, Jul. 17, 2020), have stated that the DACA recission was invalid and DACA returns to its pre-2017 rescission status. In Plaintiffs view, therefore, this Court can review the USCIS's decision not to act and compel the USCIS to accept new DACA applications.

## B. DHS has withheld mandatory agency action

Defendants next argue that the DHS has not withheld mandatory agency action that is "demanded by law." *See* ECF No. 23 at 13. In Defendants' view, nothing in

3

the 2012 DACA memo, the Supreme Court's decision in *Regents*, or the *Casa De Maryland* case, prohibits DHS's ability to change DACA or forces the DHS to accept new DACA applications. *Id*. However, *Regents* and *Casa De Maryland* make it clear that: (1) DACA was unlawfully rescinded; and (2) DACA returned to its pre-2017 recission status. So, even if the 2012 memorandum is not a legally binding commitment and does not confer any substantive rights on individuals, it must be followed because a Federal Court has explicitly stated as much. *See* Order at 3, *Casa De Marlyand* ("The rescission of the DACA policy is VACATED, and the policy is restored to its pre-September 5, 2017 status.").

### C. Plaintiffs do not lack standing to bring this action

Defendants next argue that Plaintiffs lack standing to bring this action because they have not suffered any injuries, as none of the Plaintiffs filed an initial DACA application during the period between the *Regents* decision and the issuance of the Wolf memorandum. *See* ECF No. 23 at 16-17. Plaintiffs disagree.

For standing under Article III of the Constitution, a plaintiff must have suffered an "injury in fact," meaning harm to a legally protected interest that is 1) "concrete and particularized" and "actual or imminent;" 2) "fairly traceable to: the challenged conduct; and 3) "likely to be redressed" by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations omitted).

In this case, Plaintiffs have suffered a harm that is actual, concrete, and

4

particularized because Plaintiffs are unable to apply for DACA, get work authorization, and parole so that they can travel.[1] The injury—the inability to apply for DACA—is entirely traceable to the DHS's decision to not accept and adjudicate new DACA applications. Finally, Plaintiffs' injuries will be redressed by a favorable decision from this Court because if the Court grants their injunction request Plaintiffs will be able to file their initial DACA applications for the USCIS to adjudicate them.

Defendants also assert that even if Plaintiffs have standing in this case, the government is not defying the *Regents* decision, but has even complied with it. This is entirely false. The USCIS and the DHS made statements after the *Regents* decision stating that said decision was erroneous and that it would not be followed. *See* ECF No. 1 at ¶ 5-7. This is evident by the fact that the DHS rejected an initial DACA application after the *Regents* decision. *Id*. at Exh. 4.[2] Therefore, it is clear that the DHS is openly defying the *Regents* decision, contrary to Defendants' argument.

### D. DHS has abused its discretion

Defendants contend that the DHS's interlocutory decision to hold initial DACA applications pending the issuance of the Wolf memorandum was not an abuse of discretion because: (1) DHS's actions were reasonable; and (2) DHS has not departed

---

[1] Plaintiff FIEL Houston, Inc., has suffered an injury because as an organization they are unable to proceed with their mission and assist people in filing for initial DACA applications.

[2] The DHS makes the assertion that the DACA application for the particular individual was rejected because the individual failed to meet the requirements for DACA. *See* ECF No. 23 at 25, n. 8. There is, however, no evidence to support that conclusion.

from its prior course of settled adjudication. *See* ECF No. 23 at 20-21. Both points are unavailing.

The DHS's actions were not reasonable because the *Regents* and *Casa De Maryland* decisions explicitly stated that DACA returned to its pre-2017 rescission status. Therefore, the DHS was required to accept and adjudicate initial DACA applications under the original 2012 DACA memorandum, which they refused to do. And by failing to accept new applications, in accordance with binding legal authority from the U.S. Supreme Court and the Federal District Court, the DHS's actions were not reasonable.

With respect to departing from a prior course of settled adjudication, the DHS, prior to the 2017 rescission, was accepting and adjudicating initial DACA applications. Now that the Supreme Court has held the rescission of DACA was invalid, the DHS is required to accept and adjudicate applications in accordance with the 2012 DACA memorandum. By refusing to do that, the DHS is departing from its prior course of settled adjudication, and thus, has abused its discretion. *See INS v. Yang*, 519 U.S. 26, 32 (1996) ("Though an agency's discretion is unfettered at the outset, if it announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as 'arbitrary, capricious, [or] an abuse of discretion'");

*Lugo-Resendez v. Lynch*, 831 F.3d 337, 338 (5th Cir. 2016) (finding the BIA abuses its discretion when it issues a decision that is based on unexplained departures from regulations or established policies); *Wong Wing Hang v. INS*, 360 F.2d 715, 718-19 (2d Cir. 1996) (finding that an agency abuses its discretion when it inexplicably departs from prior procedures).

Defendants further argue that the Wolf memorandum was based on consideration of the relevant record, its reasoning was thoroughly explained, and it is consistent with the Supreme Court's decision in *Regents*. *See* ECF No. 23 at 20-21. Therefore, there was no abuse of discretion. *Id*. Once again, Plaintiffs are not challenging the Wolf memorandum and, in fact, they filed their amended complaint before the aforementioned memorandum was issued. Instead, they are challenging the fact that the DHS unlawfully withheld agency action after the *Regents* and *Casa De Maryland* decisions. And because the DHS is failing to follow binding precedent, there was an abuse of discretion present in this case. *See INS v. Yang*, 519 U.S. 26, 32 (1996) (finding that the government abuses discretion by departing from prior precedent).

### E.  Plaintiffs' Equal Access to Justice Act ("EAJA") claim is valid

Defendants argue that Plaintiffs' EAJA claim should be dismissed because Plaintiffs cannot prevail in this action. *See* ECF No. 23 at 27-28. As noted above, however, Plaintiffs maintain that they can prevail on their APA claims before this

7

Court. As such, Plaintiffs would be entitled to EAJA fees and costs. *See* 28 U.S.C. § 2412(d)(1)(A); *Sims v. Apfel*, 238 F.3d 597, 600-02 (5th Cir. 2001).

### F.  Plaintiffs are entitled to injunctive relief

Defendants argue that Plaintiffs are not entitled to injunctive relief because: (1) Plaintiffs are not likely to succeed on the merits of their APA claim; (2) Plaintiffs have not established irreparable harm will result absent an injunction; and (3) the balance of equities and the public interest weigh against an injunction. Respectfully, Defendants' arguments are without merit and should be dismissed.

### i.  Plaintiffs are likely to succeed on the merits

With respect to success on the merits, Plaintiffs maintain that they are likely to succeed on their APA claims, as discussed *supra* and in Plaintiffs' motion for preliminary injunction (ECF No. 11 at 3-6). Accordingly, Plaintiffs meet the first requirement for a preliminary injunction to be granted in this case.

### ii.  Plaintiffs are likely to suffer irreparable harm

Regarding irreparable harm, the Defendants argue that Plaintiffs have not put forth evidence to support the assertion that they will suffer irreparable harm if an injunction is not granted. *See* ECF No. 23 at 28. Specifically, Defendants assert that Plaintiffs have not shown that there will be imminent, nonspeculative harm because there is no reason that they are likely to be removed from the United States before their lawsuit can be resolved. *Id*. at 29. Defendants make that assertion because the

removal process is lengthy and there is no reason to believe Plaintiffs will be targeted for enforcement action, that they will be placed in removal proceedings, and that those proceedings will conclude before this Court can rule on motions for summary judgment. *Id*.

As noted in Plaintiffs' motion for preliminary injunction, Plaintiffs who have final orders of removal can be targeted, picked up by Immigration and Customs Enforcement ("ICE") at any time, and physically deported from the United States. ICE has once again begun widespread raids against those individuals who are in the United States illegally.[3] Those raids have resulted in over 2000 people being detained as of September 1, 2020, with 125 of those people being from Central and South Texas.[4]

Once an individual is detained, the physical removal process can occur quickly. For instance, if an individual is from Mexico, they can be removed within days. It is, therefore, entirely reasonable to conclude that if any Plaintiffs with a final removal order are detained by ICE, they can be quickly removed from this country prior to this Court making any decision on the outcome of this case, either through adjudicating a summary judgment motion or after trial.

With respect to those Plaintiffs who do not have final removal orders, if they

---

[3] De La Cretaz, Britini. ICE Is Using COVID-19 As An Excuse To Raid Homes & Detain Undocumented People (Sep. 2, 2020). https://www.refinery29.com/en-us/2020/09/10002503/ice-raids-la-new-york-texas-covid-19-increase.

[4] *Id*.

9

are detained by ICE and placed in potentially lengthy removal proceedings, they will have no choice but to accept an order of voluntary departure or a removal order if they are not otherwise eligible for relief from the court. In any event, those Plaintiffs would have to leave the United States and their entire lives would be destroyed. If this case goes to trial, which could take up to a year or more, then Plaintiffs would suffer irreparable harm prior to the conclusion of this case.

Defendants lastly argue that Plaintiffs will not suffer irreparable harm absent an injunction because Plaintiffs would not receive an immediate benefit if the USCIS is forced to accept initial DACA applications. *See* ECF No. 23 at 30. According to Defendants, it takes six to eight months to process a DACA request. *Id*. Because of that, Defendants assert that Plaintiffs are unlikely to get approved for DACA before this Court can reach a judgment on the underlying claims. *Id*. at 31.

While it may be true that it takes six to eight months to adjudicate initial DACA applications, employment authorization requests, and advance parole documents for Plaintiffs, they could easily be approved for those requests prior to this Court reaching a judgment on the underlying claim because, as noted above, if this case goes to trial, it will take at least a year for the Court to reach the merits. Therefore, Defendants' argument to the contrary is without merit.

In sum, Plaintiffs maintain that they will likely face imminent, nonspeculative, and irreparable harm if a preliminary injunction is not granted at this time. *See Winter*

*v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (finding that the grant of a preliminary injunction is appropriate if the plaintiff can demonstrate irreparable harm is likely to occur absent the grant of the injunction); *Allied Home Mortgage Corp. v. Donovan*, 830 F. Supp. 2d 223, 227 (S.D. Tex. 2011) (finding that the harm must be "actual and imminent, not speculative or remote). Accordingly, Plaintiffs' motion for preliminary injunction should be granted over Defendants' opposition.

### iii.    The balance of equities and public interest weigh in favor of an injunction

Defendants lastly argue that the balance of equities and the public interest weigh against granting a preliminary injunction in this case. *See* ECF No. 23 at 31. For support of that position, Defendants assert that injunctive relief in this case would frustrate and displace the Acting Secretary's judgment as to how to exercise prosecutorial discretion and his judgment as to how to best balance the relevant interests in adjudicating DACA applications. *Id*. at 30-31.

Contrary to Defendants' position, forcing the USCIS to accept new DACA applications would not frustrate the Acting Secretary's ability to run DACA. It would merely require him to do what the *Regents* and *Casa De Maryland* cases mandate— accept and adjudicate initial DACA applications in accordance with the 2012 policy memorandum. USCIS has acted unlawfully and "there is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). Therefore, in Plaintiffs' view, the

Government would suffer no harm if an injunction is granted in this matter.

Moreover, the public interest will be served if this Court were to require the USCIS to accept initial DACA applications. As noted in Plaintiff's motion for preliminary injunction, the DACA program has already been a great benefit to the public interest because it has brought many advantages to the economy of the United States. *See* ECF No. 11 at 9-10.

Allowing initial applications to be accepted will allow thousands of new individuals to be brought into the work force, which will further support the economy. *Id*. This, in addition to the fact that the U.S. immigration laws are based on promoting family unity, and it is always in the interests of governmental agencies to adhere to binding legal precedent, Plaintiffs' maintain that the public interest weighs in favor of granting an injunction.

## II. CONCLUSION

Plaintiffs maintain that this case should not be dismissed under FRCP 12(b)(1), for lack of subject-matter jurisdiction, because Plaintiffs are challenging an agency action that is being unlawfully withheld. Nor should Plaintiffs' complaint be dismissed under FRCP 12(b)(6) because Plaintiffs have stated a valid claim under the APA for which relief can be granted.

Finally, Plaintiffs' motion for preliminary injunction should be granted because Plaintiffs have indeed met all the requirements for such relief.

Respectfully submitted,

/s/ Raed Gonzalez
Raed Gonzalez, Esq.
*Counsel of Record for Plaintiff*
2200 Southwest Freeway, Suite 550
Houston, Texas 77098
Phone: (713) 481-3040
Fax: (713) 588-8683
rgonzalez@gonzalezolivierillc.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2020, the foregoing Response was served upon Defendants via the Court's CM/ECF filing system.

*/s/ Raed Gonzalez*

_____

Raed Gonzalez, Esq.
*Counsel of Record for Plaintiff*